OTIS STONE *vs.* THOMAS STONE.

Essex. November 9. — 17, 1874. AMES & ENDICOTT, JJ., absent.

A. conveyed to B. a certain dwelling-house in S., measuring twenty-two feet by seventeen, with all the privileges and appurtenances to the same belonging, or in anywise appertaining. After the death of B. her husband C. occupied the house, and her heirs conveyed by a quitclaim deed to D. a certain piece of land with the building thereon at S., meaning to describe and quitclaim the same premises now occupied by C., and the same premises that were conveyed by A. to B. *Held,* that the deed from A. to B. did not include a parcel of land adjoining, on one side, land in front of the building, and could not be made to include it by evidence of subsequent occupation. *Held, also,* that the deed to D. described only one parcel of land and did not include the lot on the side, although it was at the time in the occupation of C.; and that D. could not maintain a writ of entry to recover possession of it.

WRIT OF ENTRY, dated November 4, 1867, to recover a parcel of land on Humphrey Street in Swampscott. Plea, *nul disseisin.* At the trial in the Superior Court, before *Wilkinson,* J., the following facts appeared:

The demanded premises were a parcel of land thirty feet by thirty-three feet, lying immediately west of the dwelling-house of Mary Stone hereafter referred to, and between certain boat-houses and Humphrey Street, in Swampscott. The demanded premises, together with the dwelling-house of Mary Stone and other premises in the immediate vicinity, were originally sea-beach lying between Humphrey Street and the sea. The title to property on this beach was acquired by possession within a comparatively recent period.

The demandant put into the case a deed from Mark Graves and others to Mary Stone, wife of Thomas Stone, Senior, dated July 17, 1826, which contained the following description: "A certain dwelling-house at Swampscott, so called, in said Lynn; said dwelling-house measures twenty-two feet by seventeen feet, and is one story high and a half, and is now standing on the ridge of the beach in said Swampscott, with all the privileges and appurtenances to the same belonging, or in anywise appertaining."

Mary Stone, the wife of Thomas Stone, Senior, died in January, 1852, intestate, and her husband, Thomas Stone, Senior, died in September, 1857. Both the demandant and the tenant were children of Mary Stone and her husband, Thomas Stone, Senior.

The demandant also put into the case a deed signed by the tenant, and all the other children of Mary Stone and Thomas Stone, Senior, to the demandant, dated March 29, 1854, and acknowledged July 10, 1854. The description of the land conveyed by this deed is as follows: "All our right, title, interest and estate in and to a piece of land with the building thereon, situate at Swampscott aforesaid, meaning to describe and quitclaim the same premises now occupied by Thomas Stone, Senior, and the same premises that were conveyed to Mary Stone, wife of Thomas Stone, by Mark Graves and others as by their deed of the same, bearing date July 17, 1826, and recorded in the Essex Registry of Deeds, book 243, to which reference may be had."

The demandant contended that a title to the demanded premises passed to him by this deed of Thomas Stone, Jr., and others, and to prove that the demanded premises were embraced in the description of the land conveyed by the deed of Mark Graves and others to Mary Stone, and by the deed of Thomas Stone, Jr., and others, to the demandant, he put in testimony, tending to prove that Mary Stone, by herself and her husband and agents, took possession of the demanded premises at the same time that she took possession of the dwelling-house upon the ridge of the beach, and that she used and occupied them in connection with her said dwelling-house continuously down to the time of her death, and that Thomas Stone, Senior, after her death continued in the occupation of said dwelling-house and of the demanded premises as tenant by the curtesy, down to the date of the deed of Thomas Stone Jr., and others to the demandant.

The tenant in reply put in testimony tending to prove that he was the first to take possession of the demanded premises, that he fenced the same, and continued in the exclusive and continuous use and occupation of the same down to the date of the writ in this case, and that Mary Stone, neither by herself nor by her husband or agents, ever had any possession, use or occupation of the same in connection with the dwelling-house, and that said demanded premises were no part of the premises described in said deed, and that Thomas Stone, Senior, was not in the occupation of the demanded premises as tenant by the curtesy, after the death of his wife Mary Stone, and down to the date of the deed from Thomas Stone, Jr., and others to the demandant. The counsel for the demandant, in the cross-examination of the tenant, asked him to produce a deed made to him by Thomas Stone, Senior, of the demanded premises, dated January 12, 1853, and recorded in 1867, just before the date of the writ in this case. The tenant produced the deed, which was a quitclaim deed of the demanded premises, and the demandant put it into the case.

The tenant further offered to prove by a daughter of Thomas Stone, Senior, and Mary Stone, that her father said to her in the said dwelling-house conveyed to the said Mary Stone, and while he was occupying the same as tenant by the curtesy, after the death of his wife, and before either of the deeds in this case signed by him or the children were delivered, that his son Thomas Stone, Jr., always owned the land between the boat-houses and the street, (referring to the demanded premises,) but to save all trouble and dispute about it he should give him a deed. This testimony was offered to show the extent of the occupation of the said Thomas Stone, Senior. But the judge ruled that it was incompetent and excluded it.

The demandant's counsel contended and argued to the jury, that at the time of the deed of Thomas Stone, Jr., and others to the demandant, Thomas Stone, Senior, owned and occupied a life estate in said demanded premises, in connection with the said dwelling-house conveyed by Mark Graves and others to Mary Stone.

The counsel for the tenant asked the judge to instruct the jury as follows :

1. That the deed of Mark Graves and others to Mary Stone did not cover the land in question.

2. That the deed of Mark Graves and others only conveyed the land actually described, with perhaps the right of passage to and from the house.

The judge declined to give the instructions prayed for, and instructed the jury, with other instructions not excepted to, that all the evidence in the case was to be considered as bearing upon the question whether the demanded premises were appurtenant to and parcel of the dwelling-house lot or not; if they were so appurtenant and parcel of the dwelling-house lot, the demandant was entitled to a verdict; if they were not, he was not entitled to a verdict.

The jury returned a verdict for the demandant, and the tenant alleged exceptions.

*J. W. Perry & A. L. Huntington*, for the tenant.

*S. B. Ives, Jr.*, for the demandant. 1. It was competent for the jury to find that the deed of Mark Graves and others to Mary Stone covered the demanded premises, either as parcel or appurtenant. *Ammidown v. Ball*, 8 Allen, 293.

2. The description in the deed to the demandant is not merely cumulative; but it is sufficient to include any land in the occupation of the father, which was adjacent to that conveyed by Graves to Mary Stone, even though not strictly within the description in that deed to Mary Stone. The words indicate that the two descriptions are not intended to be identical, but that one is designed to supply any deficiencies in the other. If, therefore, the demanded premises were occupied by Thomas Stone, either as his own, or as his wife's, they passed by this conveyance. If he occupied them as tenant by the curtesy, the defendant might well convey; if he occupied them as his own, then the conveyance of the defendant will operate by way of estoppel, and he cannot now deny the title which his deed purports to convey.

WELLS, J. The deed to the demandant does not describe two parcels of land; but one parcel to which both descriptions are applicable. " The same premises now occupied by Thomas Stone, Senior," when further defined, as also the same premises " conveyed to Mary Stone, wife of Thomas Stone, by Mark Graves and others, as by their deed of the same bearing date of July 17, 1826," must be limited by the deed so referred to.

'That deed conveyed "a certain dwelling-house at Swampscott, so called, in said Lynn; said dwelling-house measures twenty-two feet by seventeen feet, and is one story high and a half, and is now standing on the ridge of the beach," with all privileges and appurtenances. The demanded premises are not under said dwelling-house, nor in front or rear of it, nor in any way so connected with or having relations to it as to warrant a construction that would make them pass as parcel of the land on which the house stands, or by any implication of grant. The land demanded adjoins the land in front of the dwelling-house, but is itself wholly between certain boat-houses, belonging to other parties, and Humphrey Street. We do not think that the deed from Mark Graves and others to Mary Stone, can be made to include such a parcel of land by any evidence of subsequent occupation. The instructions, given to the jury on this point, are applicable only where the boundaries and description of the land, ascertained by the proof of occupation, are such that the terms of the deed will apply to and be answered by them; or at least be consistent with them. Applied to this case we think the instructions erroneous.

As this point must apparently be decisive, we do not deem it necessary to consider the other questions argued.

*Exceptions sustained.*